UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA G., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 5:19-cv-00291-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## PROCEDURAL BACKGROUND

In November 2014, Plaintiff Maria G. ("Plaintiff") applied for Title II disability insurance benefits ("DIB") alleging a disability onset date of September 20, 1999. Administrative Record ("AR") 153-56.[2]

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] Plaintiff submitted an earlier application and was found "not disabled" in an ALJ decision dated December 9, 2005. AR 16. The Social Security Administration ("SSA") was unable to locate a copy of the 2005 decision, so the ALJ considered Plaintiff's application de novo. Id.

On October 2, 2017, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by an attorney, appeared and testified, as did a vocational expert ("VE"). AR 29-71. On March 23, 2018, the ALJ issued an unfavorable decision. AR 12-28. The ALJ found that Plaintiff met the earnings requirements to qualify for DIB through March 31, 2007, the last date insured ("LDI"). AR 16. Through her LDI, Plaintiff suffered from severe neck and back impairments described as "degenerative disc disease of the cervical spine, status post-fusion surgery and mild degenerative changes of lumbar spine." AR 18. The ALJ found that before her LDI, Plaintiff had "no significant problems with her vision." AR 18-19.

Despite her impairments, the ALJ found that through her LDI, Plaintiff had the residual functional capacity ("RFC") to do light work as defined in 20 C.F.R. § 404.1567(b) with some additional limitations, as follows:

> [S]he can lift, carry, push, and pull up to 20 pounds occasionally, 10 pounds frequently; sit up to six hours in an eight-hour workday; stand and/or walk up to three hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel[,] crouch, and crawl.

AR 19-20.

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could perform the jobs of sewing machine operator (Dictionary of Occupational Titles ["DOT"] 787.685-046) or "Cashier II" (DOT 211.462-010). AR 23. The ALJ concluded that Plaintiff was not disabled from September 20, 1999, through her LDI of March 31, 2007. Id.

## II.
## ISSUES PRESENTED

Issue One: Whether the ALJ's finding that Plaintiff can work as a sewing machine operator and Cashier II is supported by substantial evidence.

1     Issue Two: Whether Plaintiff's becoming legally blind years after her LDI "froze" and extended her insured status.

    Issue Three: Whether remand is required to permit the ALJ to consider new evidence.

(Dkt. 20 Joint Stipulation ["JS"] at 4.)

## III.
## DISCUSSION

### A. ISSUE ONE: Alleged Step-Five Error.

Plaintiff argues that the occupations of Cashier II and sewing machine operator are both "'light' exertional occupations requiring the ability to stand for the majority of the day," per Social Security Ruling ("SSR") 83-10. (JS at 6.) Plaintiff's RFC, however, limits her to standing for only three hours per day. AR 19. Plaintiff argues that this conflict with the DOT was never addressed by the VE or the ALJ. (JS at 7-8.)

**1. Relevant Administrative Proceedings.**

The SSA's regulations define "light" work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. …

20 C.F.R. § 404.1567(b).

Social Security Ruling 83-10 interprets this regulation, providing more quantified terms, as follows:

> The regulations define light work as lifting no more than 20 pounds

at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position. "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10.

At the hearing, the ALJ asked the VE what jobs a hypothetical worker with Plaintiff's RFC could do, as follows:

**ALJ**: [T]he next hypothetical individual, could work at the light range, 20 pounds occasionally, 10 pounds frequently. The sitting

4

would still be six hours out of an eight-hour work day, but the
standing and walking would be three hours out of an eight-hour work
day; could occasionally climb ramps and stairs, no climbing ladders,
ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and
crawl.  Is there work for this individual?

**VE**: Yes.  There would be some light, unskilled work.  All that I
mention will be light, SVP 2.  Sewing machine operator, 787.685-
046, 34,000 positions in the nation.  Or cashier, Roman numeral II,
211.462-010, with approximately 150,000 positions in the nation.
But I'm going to erode it for 90 percent, allowing for that need for
flexibility in sitting and standing.  And after the  erosion, there are
approximately 15,000 positions in the nation.  Types of positions I'd
be considering would be ticket seller or cashier or cashier in a
cafeteria.  I don't believe there would be any other positions other
than that.  The other types of positions that afford flexibility in sitting
and standing, I take the position that one needs to be able to stand and
walk four out of eight [hours].

AR 67-68.

Neither the ALJ nor counsel for Plaintiff asked the VE about any perceived conflicts between her testimony and the DOT.  AR 69-70.

**2. The VE Adequately Explained Any Conflict with the DOT.**

a. Sewing Machine Operator.

Per the above-cited definitions, not all light work requires the ability to stand or walk for six hours per day.  Rather, the DOT also rates jobs as "light" when they involve "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work."  SSR 83-10.  The specific example given is that of a mattress sewing machine operator.  Id. Plaintiff points to nothing in the DOT's description of the duties of a sewing

5

machine operator that suggests that its "light" rating is due to the need to walk or stand more than three hours per day versus the use of foot pedals. Thus, as to the sewing machine operator job, Plaintiff has not demonstrated a conflict between the VE's testimony and the DOT.

In her reply, Plaintiff concedes that there is no conflict as to the sewing machine operator job, but she argues that the ability to do one occupation is not enough to find her not disabled, citing Lounsburry v. Barnhart, 468 F.3d 1111, 1117 (9th Cir. 2006). (JS at 13.) Lounsburry involved the application of Grid Rule 202.07 to a claimant of advanced age with transferrable skills. Lounsburry, 468 F.3d at 1116-17. Plaintiff has failed to develop any Lounsburry-based argument by failing to discuss that case's facts and holding, identify which Grid Rule she contends applies to her, and explain why she is (or is not) similarly situated to claimant Lounsburry. See DeBerry v. Comm'r of SSA, 352 Fed. App'x 173, 176 (9th Cir. 2009) (declining to consider claim that ALJ failed properly to apply Social Security law where claimant did not argue the issue "with any specificity" in her opening brief and failed to cite "any evidence or legal authority" in support of her position); see generally Indep. Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (party's "bare assertion of an issue" in briefing "does not preserve a claim" on appeal). Indeed, district courts regularly affirm where ALJs found not disabled claimants who could do a single job with fewer than 35,000 positions in the nation, rendering any error on other jobs harmless. See, e.g., Purser v. Colvin, No. 3:15-CV-05845-KLS, 2016 WL 3356193, at *4 (W.D. Wash. June 17, 2016) ("[T]he remaining 28,970 jobs in the national economy . . . for the bench hand occupation is sufficient to satisfy the ALJ's findings at step five."); Davis v. Colvin, No. EDCV 13-464-OP, 2014 WL 358407, at *10 (C.D. Cal. Jan. 30, 2014) ("Thus, in this case, the Court finds no error in the ALJ's finding that 25,200 jobs [of appointment clerk] in the national economy constitutes a significant number of jobs.").

b.  Cashier II.

As noted above, even if the ALJ erred with respect to the Cashier II job, that error would be harmless. But Plaintiff has not identified any such error. The VE specifically eroded the number of available Cashier II jobs to account for a restriction to walking and standing only three hours per day. AR 67-68. Thus, the VE accounted for the discrepancy between her opinion and the DOT's rating of this job as light work.

To the extent that Plaintiff argues the VE "addressed the sit stand option but not the limitation to three hours [of standing and walking]," Plaintiff takes the VE's words out of context. (JS at 8.) The ALJ's hypothetical did not include a sit/stand option, but rather a limitation to standing and walking for only three hours per day. AR 67. In reading the VE's testimony as a whole, it is evident that the VE's reference to "flexibility in sitting and standing" addressed standing and walking limitations, because she then said, "I take the position that one needs to be able to stand and walk four out of eight [hours]" to explain why other positions were unavailable. AR 68.

Plaintiff also argues that the VE eroded the number of available Cashier II jobs by 90% "based upon standing only four hours of the day, not three." (JS at 13.) This again misunderstands the VE's testimony. The VE testified that to perform "other" unskilled, light work (i.e., jobs *other* than that of cashier), one would need to be able to stand or walk at least four hours per day.

**B. <u>ISSUE TWO: Retroactive "Freeze" Due to Blindness.</u>**

The SSA publishes the Program Operations Manual System ("POMS"), a set of internal guidelines intended for adjudicators at the initial or reconsideration levels. <u>Lockwood v. Comm'r Soc. Sec. Admin.</u>, 616 F.3d 1068, 1073 (9th Cir. 2010). The POMS "may be entitled to respect … to the extent it provides a persuasive interpretation of an ambiguous regulation," but the POMS "does not impose judicially enforceable duties on either this court or the ALJ." <u>Kennedy v.</u>

7

Colvin, 738 F.3d 1172, 1177-78 (9th Cir. 2013).

Plaintiff cites the POMS DI 25501.380 to argue that if she became blind after her LDI but before the ALJ's decision, then she is entitled to "freeze" her earnings record (and preserve her insured status) through the date of the ALJ's decision. (JS at 14-15.) She argues that her vision impairment, which worsened from needing glasses in 2007 to being legally blind in 2017, tolled her LDI, such that the ALJ was required to assess its severity after March 31, 2007. (JS at 16.)

### 1. Summary of Relevant Evidence.

Plaintiff testified that she had cataracts due to diabetes. AR 51. In 2007, she could read using glasses. Id. In 2014, a medical source indicated "no decrease in vision." AR 439. In 2015, Plaintiff could still drive. AR 182.

The ALJ determined that Plaintiff had "no significant problems with her vision" before March 2007 (AR 19), and Plaintiff agrees that the ALJ's "assessment of [her] vision before 2007 is fair." (JS at 15.)

In the JS, Plaintiff discusses evidence of treatment for vision impairments in 2015, 2016, and 2017. (Id.) Plaintiff cites records from two medical sources in June 2017 who stated that Plaintiff is legally blind. Id., citing AR 1172-73.

### 2. Plaintiff Cannot Rely on the POMS to Show Legal Error.

Per the above-cited authorities, the POMS does not confer any legal rights on DIB claimants. Plaintiff has failed to cite any applicable regulation that is allegedly ambiguous but was interpreted more clearly by POMS DI 25501.380. Because Plaintiff has failed to cite any supporting authority, she fails to demonstrate legal error.

Even if the Court were to consider her POMS-based argument, Plaintiff failed to cite POMS DI 25501.380 in its entirety[3] or other relevant POMS

---

[3] For example, POMS DI 25501.380 states explicitly that to establish the established onset date of statutory blindness, "a claimant must meet insured status requirements at the time the medical evidence supports a finding of statutory

provisions and explain their application to the facts of her case. For example, POMS DI 26005.001 talks about DIB claimants needing to be "statutorily blind before he or she stopped working." The premise of Plaintiff's argument (i.e., that post-LDI blindness retroactively creates indefinite LDI tolling) seems inconsistent with the concept of a freeze (which would merely preserve the status quo) and the orderly administration of the DIB program.[4]

C. **ISSUE THREE: New Evidence.**

   1. **Factual Background.**

At the hearing, Plaintiff's counsel represented that he was waiting to receive additional records from Pacific Eye Institute. AR 33. The ALJ noted that a one-page prescription from Pacific Eye Institute had been provided at the hearing and it would be part of the record. Id., referring to AR 1172. The ALJ agreed to leave the record open for two weeks to receive additional records. AR 34.

The ALJ's decision notes that Plaintiff "submitted or informed [the ALJ] about additional written evidence from Pacific Eye Institute less than five business days before the scheduled hearing date." AR 15. The ALJ found no good cause for Plaintiff's failure to submit this evidence earlier. Id. The ALJ further noted

---

blindness."

[4] Plaintiff incorrectly assumes that a "freeze is not needed when one meets the listing level of severity before the DLI" (and therefore the "freeze" language must apply to claimants who meet the statutory blindness listing *after* the DLI). (JS at 20.) According to the POM, the purpose of a freeze is: (1) "To eliminate the years of low earnings (due to a worker's disability) from the computation of benefits and to preserve the worker's insured status."; (2) "Insured status is frozen to protect future rights and benefits."; (3) "When an onset is established several years in the past, it is the DIB freeze that preserves insured status and allows payment to start based on a recent claim."; and (4) "Any year wholly or partially in a period of DIB is excluded from the computation (not counted among elapsed years). This preserves a benefit based on earnings at the time disability began." POM DI 10105.005A.

9

that the Pacific Eye Institute records pertained to treatment in 2017 or later, while Plaintiff's LDI was March 31, 2007. AR 16. As a result, those records had "little probative value," and the ALJ did not make them part of the AR. Id. Plaintiff's request for review by the Appeals Council mentioned neither new evidence nor the ALJ's decision not to exhibit the Pacific Eye Institute records. AR 152.

Now, Plaintiff submits approximately 40 pages of records from the Pacific Eye Institute. (Dkt. 20-1.) Insofar as they are legible, they date from 2016 or later. (Id.; see also JS at 24 [discussing records].) Plaintiff contends that she thought they were part of the AR, and she was unaware that they were not until so informed by her new counsel. (JS at 23-24.) She contends that the records are relevant to show that she developed blindness before the ALJ's decision, thereby extending her LDI, per Issue Two. (JS at 24.)

**2. Remand Is Not Required.**

The Court has the authority to remand this matter for further proceedings upon the presentation of new and material evidence for which good cause exists for the lack of earlier presentation. 40 U.S.C. § 405(g).

Plaintiff fails to demonstrate good cause for failing to submit post-2016 documents before her appeal to the district court. The ALJ and her attorney specifically discussed records from the Pacific Eye Institute at the hearing on October 2, 2017. AR 33. Counsel knew that the administrative record would only be held open for two weeks. AR 34. Plaintiff has not explained why counsel was unable to obtain and submit then-existing records within those two weeks or request a further extension.

Even if Plaintiff's or counsel's error constituted good cause, she has failed to demonstrate materiality. As discussed in Issue Two, the assertion that Plaintiff became legally blind years after her LDI did not extend her 2007 LDI to the ALJ's 2018 decision. Thus, medical records describing Plaintiff's vision impairments in 2016, 2017, and 2018 are immaterial to the determination of Plaintiff's DIB

application.

## IV.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: January 28, 2020

_____
KAREN E. SCOTT
United States Magistrate Judge